Good morning, Your Honor. It's Gary Burcham for Appellant Bobby Wilson. The first issue I'd like to address this morning concerns the District Court's imposition of the Obstruction of Justice Enhancement upon Mr. Wilson. In the first two sentencings, the District Court did not impose this enhancement, but in the third sentencing, the District Court did impose a two-level upward adjustment for obstruction of justice based upon what is essentially explained to be the government's reasoning for the enhancement. JUDGE REHL Doesn't that suggest it was that Judge Rehl understood this had been set back for a plenary re-sentencing? WILSON Well, at three points during the hearing, Judge Rehl appeared to believe otherwise, that it was an amyling limiter. JUDGE REHL Well, that was early on, and then the lawyers straightened him out. It's true, he did not say, oh, I was mistaken. But what happened from there appears to me, looking at it, that it was a plenary re-sentencing, and the point that you just made seems to underscore that. WILSON Well, Judge Rehl never explicitly adopted what had been stated by the parties, both the defense and the government, that it was a full re-sentencing, not simply an amyling review. But the concern I have is that the District Court did not understand that, or did not acknowledge the fact that the review was not simply based upon what was in place at the time of the prior sentencing, but could be based upon new facts, new arguments, and especially the allocution that was made by Mr. Wilson. JUDGE REHL But the lawyers on the scene seemed to understand that that's what was going on, that he was on the right track, because nobody at the end of it ever said, wait a minute, time out. You still haven't done what you were supposed to do. WILSON Certainly, the lawyers made it clear to the District Court that this was a full re-sentencing, and again, the District Court never explicitly adopted that. But the fact   new arguments, and especially the allocation that was made by Mr. Wilson. But on the other hand, never said, following the lawyer's statement, that no, I believe it's amyling only. And at the end of the hearing, the District Court did reference 3553A, as well as Booker. And so, even if the District Court correctly believed this was a full re-sentencing, I believe the District Court clearly erred with respect to its imposition of the two-level upward adjustment for obstruction of justice. The government essentially argued there were two bases for the obstruction of justice enhancement. Number one, the threats that were made to cooperate with Ms. Taylor through the ventilation ducts at the MDC. And two, facts relating to the drafting of this false declaration, which was submitted to Mr. Taylor. KAGAN But at the first re-sentencing, didn't Judge Real actually determine that there had been obstruction of justice, even though he did not add that increment onto the sentence? So he had heard the facts. He had come to a conclusion. Need he come to the same conclusion a second time? Well, you're correct, Your Honor. The second sentencing, Judge Real did essentially say, well, I find that there was obstruction. I'm not going to impose it in this case. But he did make it just a general finding that the facts did support the obstruction enhancement. My position is that even if the judge made that finding, that finding is clearly erroneous. With respect to the first basis for obstruction, the threats that were made to Mr. Taylor through the ventilation ducts at the MDC, Mr. Taylor never identified Mr. Wilson as a person who indicated that it was Mr. Mitchell, Bobby Mitchell, the other Bobby, who was making those threats through the ventilation ducts. The closer call concerns the false declaration, which was submitted to Mr. Taylor. But if you look at the testimony of Taylor at trial, what he appears to indicate is that he had two discussions with other inmates about this declaration. Both those discussions were with Mr. Mitchell. Mr. Wilson was listening through this phone system, which they call it, the MDC ventilation system. Mr. Wilson was listening, but Mr. Taylor does not indicate at all that Mr. Wilson had any involvement in either the preparation of the document or trying to get Mr. Taylor to sign the document. So the question really is, if Mr. Wilson is simply there when Mr. Mitchell and Mr. Taylor are discussing this declaration, does that mere presence rise to the level of obstruction of justice? I would submit that pursuant to the case law of this court and the Supreme Court, there needs to be more. I think there needs to be an affirmative or knowing attempt to obstruct justice, not simply being present in a situation where someone else is trying to obstruct justice. Clearly, I think Bobby Mitchell was obstructing justice in this case by drafting the declaration, which was found in his cell, and by attempting to persuade Mr. Taylor to sign the declaration. But Mr. Wilson's mere presence to those conversations between Mr. Mitchell and Mr. Taylor, I don't believe, rise to the level of obstructing justice. Related to that issue is the Rule 32 issue concerning the district court's failure to decide the factual issue concerning this obstruction. In the district court, and even still today, there is a factual dispute, and that is, did Mr. Wilson either make threats to Mr. Taylor or did he attempt to get Mr. Taylor to sign the declaration? Clearly, in the district court's filing prior to this most recent resentencing, Mr. Wilson argued that he never did either one of those things. Well, the facts aren't disputed, it's the conclusions to be drawn from the facts that are disputed. Well, correct, Your Honor. The facts of 32, is it a problem? It's the conclusions that you're arguing about. The conclusions based upon the testimony of Taylor, which I think are really intertwined with the testimony. We have the testimony of the witness, and the question that follows is, what does that testimony mean? What did Taylor mean when he testified as he testified? And I think, well, Your Honor is certainly correct that legal conclusions are not covered by Rule 32. I think in this case, the way that the legal arguments and the factual issues are intertwined required Judge Real to say, I find that there was obstruction because Mr. Wilson did A, B, and C, or A, or A and B, and in this case, all he simply found was that there was obstruction and never made any findings, whether he obstructed justice by making threats or by attempting to have Mr. Taylor sign the declaration. Counsel, what facts in your view remain unresolved? The facts that remain unresolved is whether Mr. Wilson attempted to have Mr. Taylor sign the declaration. Why is that unresolved? Well, because Mr. Wilson obviously has taken the position that he did not do that. The government has taken the position that he did do that, and what we have is a testimony of Mr. Taylor. But that's the conclusion, right? I mean, what fact, what specific fact, whether or not he whispered through the ventilation system or whether or not he presented the document, what fact, specific fact, underscores that argument? The fact that is in dispute is whether in that conversation Mr. Wilson attempted to have Mr. Taylor sign that declaration. And I agree that it's not as factual as a typical PSR objection would be. It's not an historical fact. It's kind of like the one layer above. Exactly. And that's the conclusion or the inference that the court drew, historical facts before. And I would simply assert to the court that because all we have in this case is a testimony of Mr. Taylor and the conclusions to be drawn from that testimony, that this is de facto a factual dispute that required resolution pursuant to Rule 32. If the court has no further questions, I'll reserve my final couple minutes for rebuttal. All right. Thank you very much. May it please the Court, my name is Carol Peterson and I represent the Plaintiff Appellee, United States of America. As the Court is well aware, this case has a rather unique and long history. The defendant has been sentenced by Judge Real three times and has taken his the context of this long history, Your Honors, I believe that it is clear that the District Court both understood the nature of its sentencing discretion in this case and also properly calculated the applicable sentencing guideline range in this case. Jumping ahead to the factual underpinnings for the obstruction of justice enhancement in this case, since the inception I believe that the defense attorneys across the board have erroneously focused on I have erroneously focused on only certain facts to the exclusion of others. And as the Court is reviewing this case, I would direct you specifically to the excerpts of record pages 84 to 97. At page 84, Taylor testified specifically that he was speaking to his cousin via the Venn system at MDC. Bobby Mitchell came on the Venn system as well, and at that point, Bobby Mitchell didn't like the situation that Taylor was in, in terms of testifying against him. Counsel, where specifically does he identify both men as talking about? At page 84, he does say, Your Honors, he talks about both people. And then again, later at What line? Let me get that, Your Honor. He said, I was talking to my cousin one day in the Venn, and he happened to just get on it. That's right. Okay, I see what you're saying. Line 8, that they was going to make a declaration out for him. Correct. They were going to make a declaration out for me. And then on cross-examination, at page 93, he discusses the fact that his cousin clearly spoke to him about signing the declaration. Now, he What line was that? And I don't have that line either, Your Honor. I know that it's at page 93. Okay. Okay. Let me ask you this, Counsel. Where in the sentencing hearing did the district court judge specifically make a factual finding regarding the involvement of the defendant? Your Honor, he did not make that specific factual finding regarding the involvement of the defendant here. As the court has already noted, at the second sentencing, at the initial re-sentencing, he did say that he found that the two enhancements for taking money belonging to a financial institution and obstruction of justice would apply. I think it's important to note in the context of this case that the court did sit through a nearly two-week trial, heard Jakari Taylor's testimony firsthand, and had numerous opportunities to review that testimony and the testimony presented to him in the sentencing position papers in preparation for the case that had been argued at length before him in this particular sentencing hearing. And the judge clearly said at the end of that sentencing hearing that he was imposing the sentence as calculated by the government. I don't believe that there's any issue about whether or not he did in fact impose the obstruction of justice enhancement. Both parties agree and understand that he did that. Really, the only issue is whether or not he should have made factual findings. He did not make a specific factual finding, and I don't believe that he was required to in this particular case. What case authority are you relying upon to support your argument that no specific factual finding is required? Well, Your Honor, there are multiple cases. Give me your best one. Carter, 219 F. 3rd, 867. In that particular case, the court acknowledged that generally the conclusions to be drawn from those facts are in dispute, but the court noted that in Carter, there were several, several actual specific factual issues that were in dispute that should have been resolved by the district court, specifically in that case, the number of individuals that this person directed in order to obtain her manager or supervisor position, her portrayal of her role as a distributor of checks, and the number of checks that she had. In this particular case, Your Honor, the defense had an opportunity in its reply brief to say to the court, yes, it did make specific factual objections, but his only reference to those specific factual objections is at page 128 of his excerpt of record, and that transcript page reinforces the distinction that the government's trying to make here, which is that defendant never objected as a whole to Taylor's testimony. He stated that the evidence was insufficient to support the enhancement. He stated that the evidence failed to prove the enhancement, but nowhere did he attack the factual underpinnings of Taylor's testimony. He never had Defendant Wilson submit a declaration to say I was not present and did not make those statements to Jakari Taylor. He never had another inmate who was present come forward to attack the truthfulness of what Jakari Taylor was saying. And given all of those circumstances and the presentation of those facts to the court and the fact that the court itself was present for Jakari Taylor's testimony demonstrate that no factual findings in this case were required. Unless the court has any additional specific questions, I would submit. It appears not. Thank you, counsel. Thank you, Your Honor. Rebuttal? Could we have two minutes and 26 seconds, please? Thank you. On page 128 of the excerpt of record, lines 18 through 20, Mr. Wilson's District Court counsel wrote that the record also fails to prove that Wilson actually threatened Taylor, prepared the false declaration, or attempted to convince him to sign it. That is the factual dispute that exists in this case. With regard to what Taylor's testimony demonstrates, I'd ask the court to look at Supplemental ER, page 94, lines 16 through 5, on the next page, page 95. In that testimony, during cross-examination, Taylor clarifies what his discussions included in the ventilation shafts between Mr. Wilson and Mr. Mitchell. And what he ultimately says is, I had two conversations with Bobby Mitchell concerning the declaration, and during both of those conversations, Mr. Wilson was simply listening. And so, while it's a little bit unclear earlier in his testimony exactly who was saying what, he was using the pronoun they to describe who was saying what during these discussions, I think page 94 of the Supplemental ER clearly sets forth what was happening. And that was Bobby Mitchell having a conversation with Taylor concerning the declaration that he had to sign it, that he should sign it, and Mr. Wilson simply listening to that conversation. And again, I would submit to the court that his mere presence during those conversations is insufficient for the disproportionate position. What about the statement that they were going to make out a declaration for him? Well, that certainly is problematic. It's the pronoun that would infer that it was Mr. Wilson and Mr. Mitchell involved in the creation of this horrible idea to make this declaration. Well, who delivered the declaration? Someone named Mr. Englund. Reuben Englund. Right. Who did he say it had come from? The message he delivered was that it came from Mr. Wilson and from Mr. Mitchell. So, why isn't that enough to support the... Well, our position is that Mr. Mitchell obviously said it was from Mr. Wilson as well to strengthen the force behind the declaration, and that Mr. Taylor's testimony that the declaration concerned Mr. Mitchell and not Mr. Wilson. Mr. Mitchell wasn't the one who talked about the declaration. The declaration was found in Mr. Mitchell's cell. This whole deal was Mr. Mitchell's deal, not Mr. Wilson's deal. He might have been present during some of the discussions, but it was Mr. Mitchell's thing and not Mr. Wilson's, and that's the basis for our argument with the district court's imposition of that enhancement. Taylor was supposed to testify against him. He was supposed to testify against Mr. Wilson, and he did. All right. Thank you, counsel. Thank you very much. Thank you, counsel. The case just argued is submitted for decision by the court. The next case on calendar for argument is United States v. Sanchez.
judges: Trott, Roth, Rawlinson